IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 09-cv-00344-CMA

LEROY E. VALDEZ,

    Applicant,

v.

SUSAN JONES, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

---

**ORDER ON PETITION FOR HABEAS CORPUS**

---

The matter before the Court is Applicant's Amended Application For A Writ Of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 7). The Court has determined that the Application can be resolved on the parties' briefing and that no oral argument is necessary.

### I. BACKGROUND

In 1999, a jury in Jefferson County, Colorado District Court found Applicant guilty of second-degree burglary, criminal mischief, and possession of a Schedule II controlled substance. He was adjudicated as a habitual criminal and sentenced to forty-eight years in prison. The Colorado Court of Appeals affirmed his conviction, and the Colorado Supreme Court denied Applicant's petition for certiorari review.

In February 2003, Applicant filed a Colo. R. Crim. P. 35(c) motion for post-conviction relief requesting the state district court to vacate the judgment or, in the

alternative, to appoint conflict free counsel. Applicant contended that his Fifth, Sixth, and Fourteenth Amendment Constitutional rights were violated leading up to and during the course of trial.

In August 2006, the state district court issued an order granting in part and denying in part Applicant's motion. The court granted Applicant a new trial on the burglary and criminal mischief counts on grounds that trial counsel should have made more of an effort to locate and secure the attendance at trial of certain witnesses and that trial counsel introduced prejudicial evidence concerning Applicant's Department of Correction(s) identification card. The court upheld the possession count as no reasonable probability existed that the outcome would have differed had trial counsel met the requisite standard of care.

The prosecution appealed the reversal of the burglary and criminal mischief convictions and Applicant cross-appealed the denial of his motion related to the possession conviction. In July 2008, the Colorado Court of Appeals affirmed the state district court's reversal of the burglary and criminal mischief convictions and, accordingly, did not address the issues raised in Applicant's cross-appeal.[1] The Colorado Supreme Court denied Applicant's petition for certiorari review in November 2008.[2]

---

[1] *People v. Valdez*, No. 06CA2073, slip op. (Colo. App. July 24, 2008).

[2] *People v. Valdez*, No. 06CA2073, slip op. (Colo. Nov. 17, 2008).

In February 2009, Applicant filed in the state district court a motion to dismiss the remaining controlled possession count. The state district court denied Applicant's motion and he did not appeal the decision.

## II. REMAINING CLAIMS

On February 18, 2009, Applicant filed his original Application For Writ Of Habeas Corpus.[3] On March 13, 2009, Applicant filed an Amended Application For Writ Of Habeas Corpus, which contains five numbered Claims.[4] The parties thereafter filed several pre-Answer responses.[5]

On August 20, 2009, Senior Judge Zita L. Weinshienk ordered the partial dismissal of the Amended Application on grounds that the dismissed claims were not fully exhausted.[6] Judge Weinshienk dismissed Claim One, the ineffective assistance counsel portion of Claim Three, Claim Four, and the due process and equal protection portions of Claim Five.[7] Applicant filed a motion to reconsider this ruling and this Court affirmed Judge Weinshienk's order.[8]

---

[3] Doc. # 1.

[4] Doc. # 7.

[5] Pre-Answer Resp. (Doc. No. 14; Apr. 27, 2009); Supplement To Pre-Answer Resp. (Doc. # 1; July 14, 2009); Pet'r Reply To Resp't Supplement Pre-Answer Resp. (Doc. # 22; July 24, 2009).

[6] Order (Doc. No. 23).

[7] Id.

[8] Doc. No. 41 (Dec. 15, 2009).

3

The following claims remain to be resolved:

- Claim 2: Fifth Amendment violation arising from the Wheat Ridge Police officers' interrogation of Applicant before they advised him of his *Miranda* rights.

- Claim 3: Sixth Amendment violation arising from denial of Applicant's request to represent himself in the evidentiary hearing for the Colo. R. Crim. P. 35(c) motion.

- Claim 5: Fourteenth Amendment violation arising from the insufficient evidence used to convict Applicant of the controlled possession count.

### III. LEGAL STANDARD

**A. HABEAS CORPUS ACTIONS**

When reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.[9] "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*."[10] The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established

---

[9] *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[10] *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).

appellate review process."[11]  Exhaustion issues have already been handled by this Court in this matter.[12]

Because Applicant filed his Application after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), that statute governs the Court's review.[13]  Under the AEDPA, a district court may only consider a habeas petition when the petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States."[14]

28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[15]

---

[11]  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[12]  *See* Order (Doc. # 23).

[13]  *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (*citing Rogers v. Gibson,* 173 F.3d 1278, 1282 n.1 (10th Cir. 1999)).

[14]  28 U.S.C. § 2254(a).

[15]  28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).[16] The threshold question pursuant to § 2254(d)(1) is whether a petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.[17] Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."[18] Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.[19]

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).[20] If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.[21]

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that]

---

[16] *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).

[17] *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).

[18] *Id.* at 412.

[19] *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

[20] *See id.* at 1018.

[21] *See Williams*, 529 U.S. at 404-05.

6

precedent."[22] "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"[23]

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.[24] Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.[25]

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one.[26] "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable."[27] "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude

---

[22] *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (internal quotation marks and brackets omitted) (*quoting Williams*, 529 U.S. at 405).

[23] *Williams*, 529 U.S. at 405 (citation omitted).

[24] *Id.* at 407-08.

[25] *House*, 527 F.3d at 1018.

[26] *See Williams*, 529 U.S. at 409-10.

[27] *Id.* at 411.

7

the state court misapplied Supreme Court law."[28]  "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."[29]

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).[30] Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented.  Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"[31]

The Court "owes deference to the state court's *result*, even if its reasoning is not expressly stated."[32]  Therefore, the Court "must uphold the state court's summary decision unless [an] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts

---

[28] *Maynard*, 468 F.3d at 671.

[29] *Id.*

[30] See *Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).

[31] *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (*quoting Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

[32] *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).

in light of the evidence presented."[33] "[T]his 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims."[34]

B.  *PRO SE* LITIGANT

Applicant is proceeding *pro se.* The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."[35] However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[36] A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged.[37] The Applicant's *pro se* status does not entitle him to an application of different rules.[38]

### IV.  APPLICANT'S REMAINING CLAIMS

A.  CLAIM TWO:  FIFTH AMENDMENT *MIRANDA* VIOLATION

In Claim Two, Applicant asserts that his Fifth Amendment rights were violated when the police questioned him without reading his *Miranda* rights. The Colorado

---

[33]  *Id.* at 1178.

[34]  *Id.*

[35]  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); see also *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

[36]  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[37]  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[38]  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

Court of Appeals did not adjudicate this claim on the merits[39] so the claim is reviewed *de novo*.[40] However, the state district court's findings of fact continue to be presumed correct pursuant to 28 U.S.C. § 2254(e)(1).

"[T]he core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial."[41] *Miranda* recognized that this protection "is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves."[42] In *Miranda* the court "concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely."[43] *Id.* These safeguards require police to warn the suspect about his rights to remain silent and to have counsel present, and to cease questioning when the suspect invokes either right."[44] "Any statements obtained during

---

[39] "Because of our resolution of the prosecution's direct appeal, we need not address the issues raised in defendant's cross-appeal." *Valdez*, No. 06CA2073, slip op. at 11.

[40] The standard of review contained in 28 U.S.C. § 2254(d) only applies to petitions for habeas corpus adjudicated *on the merits* in state court. *See Thomas v. Gibson*, 218 F.3d 1213, 1220 (10th Cir. 2000); *see also Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[41] *United States v. Patane*, 542 U.S. 630, 637 (2004).

[42] *Miranda v. Arizona*, 384 U.S. 436, 467 (1966).

[43] *Id.*

[44] *Id.* at 473-74.

custodial interrogation conducted in violation of these rules may not be admitted against the accused, at least during the State's case in chief."[45]

In its order granting Applicant's motion for a new trial, the state district court found:

> Valdez claims that after being taken to the Wheat Ridge Police Department he did not wish to make any statements. He says that he was dressed in a paper suit and placed in a cold cell. He claims that officers kept coming around the cell to see if he was ready to talk, and that he eventually was so cold and miserable that he agreed to do so in order to get out of the cell.
>
> Valdez then gave the police two different versions of the facts. Initially he told Detective Jepkema that he was checking on her apartment while she was away, found the door ajar and the apartment ransacked, only to have the police arrive and assume he and Huerena were the burglars. After Jepkema expressed skepticism and suggested he had a witness who might be able to contradict this story, Valdez changed his story and confessed his guilt. He claims that he received Miranda warnings and signed a Miranda waiver form only after he gave the statement of confession.
>
> . . .
>
> The Court was well aware of Valdez' claims regarding the circumstances under which he gave his statement. The Court does not doubt that Valdez was placed in a suit made of paper material. It is willing to accept his statement that the holding cell might have been somewhat cold. However, the Court finds Valdez' contention that the confession was extracted involuntarily, and that he was not Mirandized until after he confessed, to be incredible. The Court finds Sgt. Jepkema's denial of those claims to be more credible.[46]

---

[45] *Fare v. Michael C.*, 442 U.S. 707, 718 (1979).

[46] Answer to Application For Writ Of Habeas Corpus (Doc. No. 37-3; Oct. 26, 2009), App. B at 6.

The present issue is not whether Applicant should have received a *Miranda* warning – he admits that he received an advisement – or whether that advisement was sufficient. Instead, Applicant argues that the advisement did not occur until **after** he confessed to the police.

The state trial court was faced with an issue of fact; namely, whose testimony concerning the timeline of the *Miranda* warning was more credible. The trial court resolved this issue in favor of the State and against Applicant. Pursuant to 28 U.S.C. § 2254(e)(1), this Court must presume this factual determination is correct unless Applicant can rebut it with clear and convincing evidence.

Applicant claims that police reports, trial testimony, and the written advisement form establish that his interrogation began at 5:25 A.M., lasted a half-hour, and indicate that he was not given his *Miranda* warning until 6:10 A.M.[47] The written advisement form lists Sgt. Jepkema as the advising officer and indicates that it was signed at some time between 6:05 A.M. and 6:10 A.M.[48] Additionally, a portion of a transcript is attached to Applicant's original Application that appears to be from the trial testimony of Officer T. Clark, who was present with Sgt. Jepkema in the interrogation room.[49] This testimony includes the follow exchange:

> A: I don't recall exactly how long the interview was.
> Q: So do you think it was more or less than a half hour?

---

[47] Am. Application For Writ Of Habeas Corpus (Doc. # 7), at 6.

[48] Application For Writ Of Habeas Corpus (Doc. # 1), Ex. A.

[49] *Id.*, at "Appendix".

| | | |
|---|---|---|
| A: | It was at least a half hour. | |
| Q: | And you were involved with advising Mr. Valdez of his rights? | |
| A: | I witnessed the advisement. | |
| Q: | Do you recall when that advisement was? | |
| A: | Shortly thereafter 5:25. The exact time would be on the advisement form. | |

>       . . .
>
> Q: Before he started talking to you, did he sign the advisement?
> A: Before the interview was conducted, he signed the advisement.[50]

The preceding is not clear and convincing evidence that the state court's factual determinations are incorrect. Officer Clark's trial testimony does reference 5:25 A.M., but nowhere in this testimony does he say the interview *began* at this time. Additionally, his answer indicated that 5:25 AM is not meant to be considered the canonical time. Rather, his answer was that the precise time was on the advisement form. In the context of this line of questioning, the Court finds it very reasonable to interpret "shortly thereafter 5:25 [A.M.]" not as an exact time but rather a rough approximation.

Officer Clark's police report corroborates his testimony. A section of the report is labeled with the timestamp "[0525 hrs]". However, this section exclusively describes the chemical field test he performed on the suspected cocaine. His narrative about Applicant's interrogation occurs in an entirely separate, clearly delineated section below this entry labeled with the timestamp "[cont.]". The logical assumption that can be drawn from these entries is that the field test began around 5:25 A.M. and the interview began at some time subsequent to this field test. The Court finds it reasonable, and

---

[50] *Id.*

13

likely, that performing the field test and then "return[ing] the suspected cocaine to Office Kirkland" took more than a few minutes, so that Officer Clark would not have been available to start the interrogation until after 6:00 AM. This corresponds with the time listed on the Miranda waiver form.

Further, Officer Clark consistently testified that the advisement was given before the interview was conducted, corroborating Sgt. Jepkema's version of the events.[51]

In conclusion, Applicant has not provided clear and convincing evidence to convince this Court that the state trial court's factual findings concerning the timing of the Miranda advisement was improper.[52] Therefore, the Court finds that Plaintiff's Fifth Amendment Rights have not been violated.

## B. CLAIM THREE: SIXTH AMENDMENT SELF-REPRESENTATION VIOLATION

Applicant asserts that his Sixth Amendment right to represent himself at the July 2006 Colo. R. Crim. P. 35(c) hearing was violated. The Colorado Court of Appeals did not adjudicate this claim on the merits[53] so the claim is reviewed *de novo*.

On May 17, 2006, Applicant moved to discharge his attorney and proceed *pro se*. The state district court denied the motion.

---

[51]Sgt. Jepkema's affidavit in support of the original search warrant directly stated that Applicant waived his Miranda rights prior to speaking with the officers about the incident.

[52]The Court notes that the state trial court judge presided over *both* the original trial and the subsequent post-conviction hearing, and he found that Applicant's claim that his Miranda rights were not read until after the interview was "incredible." Doc. No. 37-3, at 6.

[53] *Valdez*, No. 06CA2073, slip op. at 11.

"[N]o constitutional provision requires a state to grant post-conviction review."[54] Any constitutional issues raised focusing "only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration . . . states no cognizable federal habeas claim."[55]

Applicant's denied request for self-representation occurred during the Colo. R. Crim. P. 35(c) post-conviction proceedings. These collateral proceedings are controlled by state law and, as such, do not provide constitutional review under a federal habeas claim.[56] Therefore, the self-representation portion of Claim Three is denied.

**C.     CLAIM FIVE: FOURTEENTH AMENDMENT SUFFICIENCY-OF-THE-EVIDENCE VIOLATION**

Applicant claims that his Fourteenth Amendment rights were violated because the evidence presented was insufficient to convict him at trial. The Colorado Court of Appeals did not adjudicate this claim on the merits[57] so the claim is reviewed *de novo*.

Where sufficiency of the evidence is challenged, a court's inquiry is whether any rational trier of fact could have found the petitioner guilty beyond a reasonable doubt

---

[54] *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) (*citing Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)).

[55] *Sellers*, 135 F.3d at 1339 (*citing Montgomery v. Meloy*, 90 F.3d 1200 (7th Cir. 1996); *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993); *Hopkinson v. Shillinger*, 866 F.2d 1185, 1218-19 (10th Cir. 1989)).

[56] *See Silva v. People*, 156 P.3d 1164, 1167 (Colo. 2007) (No right to counsel under either United States or Colorado Constitutions in a Colo. R. Crim. P. 35(c) proceeding).

[57] *Valdez*, 06CA2073, slip op. at 11.

after looking at the evidence in the light most favorable to the state court judgment and after considering all reasonable inferences in support of that judgment.[58]

Applicant was found guilty at trial by a jury of possession of a Schedule II controlled substance in violation of C.R.S. § 18-18-405(1)(a), which makes it unlawful for any person to knowingly possess a controlled substance.

In its order granting a new trial, the state district court found:

> According to the People's evidence at trial, on September 19, 1998 Valdez and a confederate, Sammy Huerena, broke into an apartment rented by [the victim] and her boyfriend [], neither of whom was in the apartment at the time. Responding to a 911 call from the occupant of another apartment, who had reported hearing loud banging sounds from the [] apartment, the police arrived to find the door kicked in. The police entered, finding that the apartment had been ransacked, and that two men who turned out to be Huerena and Valdez were present. Huerena attempted to escape by jumping through a window, but he was immediately apprehended by other officers. Valdez was arrested in the apartment. A search of his person incident to the arrest revealed four baggies of suspected cocaine.
>
> Valdez later confessed to the police that he and Huerena had broken into the apartment to look for $20,000 that they suspected [the victim's boyfriend] had hidden there. He said that the drugs had been found in the apartment.
>
> . . .
>
> One of the baggies was field or "NIK" tested. That test was positive for cocaine. No laboratory test was performed. The other three baggies were not tested at all.
>
> . . .

---

[58] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Kogan v. People*, 756 P.2d 945, 950 (Colo. 1988). It is not required for this Court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19.

[Valdez told the police he] put the drugs in his sock to protect his friend who lived there.[59]

After reviewing the record, the Court finds that the state trial court's summary of this case, as reproduced above, is an accurate representation of the evidence. This evidence indicates that a search of Applicant discovered four baggies which he stated he found in the apartment. Applicant admitted that the powder contained inside of the baggies was cocaine, a Schedule II controlled substance, and later testing confirmed this statement. A rational trier of fact could have readily determined that Applicant was knowingly in possession of cocaine and, therefore, the evidence was more than sufficient to convict Applicant and his Fourteenth Amendment rights were not violated.

## V. ORDER

Accordingly, it is

ORDERED that Claims Two, Three, and Five are DENIED. It is

FURTHER ORDERED that Applicant's Amended Application For A Writ Of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 7; Mar. 13, 2009) is DENIED. It is

---

[59] Doc. # 37-3, at 2-3 & 12-13.

FURTHER ORDERED that a certificate of appealability shall not issue because Applicant has not made a substantial showing of the denial of a constitutional right.[60]

DATED at Denver, Colorado, this   8th   day of September, 2010.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[60] 28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a).